# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

JENNIFER LYNN KERN,

        Plaintiff,

vs.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

CASE NO. 1:23-CV-01339-DAC

MAGISTRATE JUDGE DARRELL A. CLAY

**MEMORANDUM OF OPINION AND ORDER**

## INTRODUCTION

Plaintiff Jennifer Lynn Kern challenges the Commissioner of Social Security's decision denying disability insurance benefits (DIB). (ECF #1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). On July 13, 2023, pursuant to Local Civil Rule 72.2, the parties consented to my exercising jurisdiction pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF #6). Following review, and for the reasons stated below, I **AFFIRM** the Commissioner's decision.

## PROCEDURAL BACKGROUND

Ms. Kern filed for DIB on July 24, 2021, alleging a disability onset date of January 29, 2021. (*See* Tr. 199). The claims were denied initially and on reconsideration. (Tr. 66, 67). She then requested a hearing before an Administrative Law Judge (ALJ). (Tr. 91-92). Ms. Kern (represented by counsel) and a vocational expert (VE) testified before the ALJ on August 22, 2022. (Tr. 32-59).

On September 15, 2022, the ALJ issued a written decision finding Ms. Kern not disabled. (Tr. 12-26). The Appeals Council denied Ms. Kern's request for review on June 13, 2023, making the hearing decision the final decision of the Commissioner. (Tr. 1-6; *see* 20 C.F.R. §§ 404.955, 404.981). Ms. Kern timely filed this action on July 11, 2023. (ECF #1).

FACTUAL BACKGROUND

## I.     Personal and Vocational Evidence

Ms. Kern was 49 years old on the alleged onset date, and 50 years old at the administrative hearing. (*See* Tr. 60, 36). She graduated from high school, attended college for four years, obtained an associate degree, and has a certification as a respiratory therapist. (*See* Tr. 38). In the past, she worked as a respiratory therapist and a service supervisor. (Tr. 53).

## II.    Relevant Medical Evidence

Ms. Kern had been diagnosed with multiple sclerosis, scoliosis, cervical radiculopathy, acute midline thoracic back pain, lumbar radiculopathy, and lumbar pain. (Tr. 427). Ms. Kern was initially diagnosed with multiple sclerosis in 2003. (Tr. 295). Ms. Kern received treatment for  MS through the Cleveland Clinic, which included Copaxone[1] injections. (Tr. 295, 299-300, 303). Ms. Kern also has a history of chronic lower back pain and has been diagnosed with scoliosis since she was a young child. (Tr. 498, 601). Ms. Kern reports her scoliosis began when she was three months old and was hospitalized with pneumonia where her physicians removed a right rib to insert chest tubes. (Tr. 52, 250).

---

[1]     Copaxone is a brand name for glatiramer, a medication used treat adults with various forms of multiple sclerosis via injections. *See Glatiramer Injection*, *MedlinePlus*, https://medlineplus.gov/druginfo/meds/a603016.html (last accessed May 14, 2024).

On January 25, 2021, Ms. Kern saw her treating doctor, Taras Mahlay, M.D. (Tr. 429). Ms. Kern reported she stopped working because her back pain was continuous and did not improve. (Tr. 429). She reported to Dr. Mahlay she experienced difficulty in performing activities of daily living, such as lifting, bending, walking and sitting. (*Id.*). Ms. Kern reported pain in her mid-thoracic area, "up towards her neck," and into the lumbar region. (*Id.*). On examination, Dr. Mahlay found tenderness in the cervical, thoracic, and lumbar spine, severe spasms of the thoracic spine, minimal flexion and extension, and moderate spasm of the lumbar spine. (Tr. 431).

On February 22, 2021, Ms. Kern consulted with a neurosurgeon, Gabriel Smith, M.D., regarding her back pain. (Tr. 353-61). Dr. Smith recommended physical therapy and requested imaging to determine the necessity of surgical intervention. (Tr. 357). The examination revealed scoliosis in the thoracic and lumbar spine. (Tr. 361). Dr. Smith recommended surgery as an option of last resort. (Tp. 357-58).

Ms. Kern underwent a physical therapy evaluation on February 24, 2021. (Tr. 547-55). She reported "aching" pain in her mid and lower back and rated that pain as a 7 out of 10 on the numeric pain scale. (Tr. 550). On examination, Ms. Kern was assessed with decreased strength in both hips, impaired sensation to light touch in her legs, and moderate decreased range of motion (Tr. 552-53). Scoliosis-based therapy was ordered where Ms. Kern would attend outpatient physical therapy twice a week, including aquatic and home-exercise therapy, with the goals of managing her pain and operating independent in a safe home exercise program. (Tr. 555, 557-88). From February 24 to April 29, 2021, Ms. Kern attended a total of 15 physical therapy sessions. (Tr. 701, 710, 713, 719, 724, 728, 735, 741, 747, 754, 759, 764, 771, 778, 785). Ms. Kern ended her physical-therapy appointments while she received injections with a plan to return later in the year

3

for advanced exercises. (Tr. 790). At the close of her physical therapy, Ms. Kern reported that she felt stronger standing, walking, and sitting. (*Id.*).

On March 22, 2021, in the middle of her physical-therapy course, Ms. Kern returned to Dr. Smith with increased lumbar pain. (Tr. 346). Dr. Smith recommended continuing physical therapy and medication management and recommended against surgery. (*Id.*). The next day, Ms. Kern visited Dr. Mahlay and reported her symptoms temporarily abate after physical therapy and she is back at her baseline by the time she returns home. (Tr. 423-24). On March 29, 2021, Ms. Kern visited her referred pain-management clinic and consulted with Susan Dover, CNP, to address ongoing pain management. (Tr. 474). Ms. Kern was prescribed Neurontin[2] as a trial while she continued physical therapy and recommended medial nerve branch blocks.[3]

On May 4 and 18, 2021, Ms. Kern received medial nerve branch block injections. (Tr. 498). She reported these injections resulted in an 80% relief of her symptoms for up to 24 hours after the injection. (*Id.*). Ms. Kern also reported her six weeks of physical therapy was unsuccessful in decreasing her pain in any way. (Tr. 499). Ms. Kern further reported finding daily activities difficult at times due to her back pain. (*Id.*).

On June 14, 2021, Dr. Mahlay completed a physical residual functional capacity (RFC) assessment of Ms. Kern's capabilities and limitations. (Tr. 322-23). He opined Ms. Kern could only

---

[2]     Neurontin is a brand name for gabapentin, an anticonvulsant. *Gabapentin*, *MedlinePlus*, https://medlineplus.gov/druginfo/meds/a694007.html (last accessed May 14, 2024).

[3]     A medial nerve branch block is a procedure used to treat patients who have pain primarily in their back where an anesthetic and possibly a steroid are injected outside the joint space near the nerve that supplies the joint called the medial branch. *See Facet and Medial Branch Blocks*, *Brigham and Women's Hospital*, https://www.brighamandwomens.org/anesthesiology-and-pain-medicine/pain-management-center/facet-and-medial-branch-blocks (last accessed May 14, 2024).

lift five pounds occasionally, stand and walk a total of one hour in an eight-hour workday, and sit for a total of three hours in an eight-hour workday. The limitations were identified as due to severe spinal disease and muscle dysfunction. (Tr. 322). Dr. Mahlay assessed Ms. Kern should never push and pull, could rarely reach, and would be limited to occasional fine and gross manipulation. (Tr. 323). In addition, Dr. Mahlay opined that Ms. Kern's severe pain would interfere with concentration, take her off task, and cause absenteeism. (*Id.*). Dr. Mahlay also recommended Ms. Kern be allowed additional unscheduled rest periods. (*Id.*). Dr. Mahlay repeated this opinion in a second physical RFC assessment completed on October 4, 2021. (Tr. 532-33).

On September 7, 2021, Ms. Kern saw Dr. Mahlay and reported that the injections initially reduced her back pain from a "seven out of ten" to a "three out of ten," but after "some weeks," it returned to a "five out of ten." (Tr. 507). Ms. Kern reported she could not lift anything over five pounds and her home activity was limited. (*Id.*). Dr. Mahlay increased Ms. Kern's prescription for NSAIDs.[4] (Tr. 507). On December 6, 2021, Dr. Mahlay wrote a note for Ms. Kern stating she had been reevaluated and her pain and dysfunction had not changed despite multiple treatments and evaluations. (Tr. 692). Dr. Mahlay opined Ms. Kern was unable to return to work due to her inability to tolerate physically her work description. (*Id.*).

Two days later, on December 8, 2021, Ms. Kern returned to her pain-management clinic. (Tr. 601). She repeated that her medial nerve branch block injections resulted in greater than 80%

---

[4]     NSAIDs, short for nonsteroidal anti-inflammatory drugs, are a class of therapeutic drugs that reduces pain, inflammation, fever and can prevent blood clots. *See NSAIDs (Nonsteroidal Anti-Inflammatory Drugs), Cleveland Clinic*, https://my.clevelandclinic.org/health/treatments/11086-non-steroidal-anti-inflammatory-medicines-nsaids (last accessed May 14, 2024). NSAIDs include aspirin and ibuprofen as well as prescription-strength brands. *Id.*

reduction of her symptoms that would abate for a couple of weeks with each injection only to return to "baseline." (*Id.*). Ms. Kern reported she still had intermittent back pain, but it was "far better than it had been previously." (*Id.*). The nurse practitioner assessed that "NSAIDs seem to control pain at this point." (Tr. 602). Ms. Kern reported taking 800 mg of Advil daily and resting for an hour mid-day. (Tr. 601). She reported feeling relatively stable and planned to follow up with the pain-management clinic on "an as-needed basis." (Tr. 602). Ms. Kern reported that returning to work caused her too much back pain so she did not plan to return. (Tr. 601).

III.     **Medical Opinions**

On July 21, 2021, state agency reviewing physician Elizabeth Das, M.D., determined Ms. Kern can lift and carry 20 pounds occasionally, 10 pounds frequently; stand and walk a total of six hours in an eight-hour workday; and sit for a total of six hours in an eight-hour day. (Tr. 63-64). Dr. Das limited Ms. Kern to occasional climbing of ramps and stairs; never climbing ladders, ropes, or scaffolds; occasional stooping, crouching, and crawling; and unlimited balancing and kneeling. (Tr. 63). Dr. Das did not find any manipulative, visual, communicative, or environmental limitations. (Tr. 64). State agency reviewing physician Mehr Siddiqui, M.D., affirmed Dr. Das's findings on December 7, 2021. (Tr. 71-72).

IV.     **Administrative Hearing**

On August 22, 2022, Ms. Kern participated in a remote hearing via videoconference before the ALJ. (Tr. 34). Previously, Ms. Kerr worked at Southwest General Health Center, Regency Hospital, and St. Augustine Manor as a respiratory therapist. (Tr. 38-39). When she worked at St. Augustine, Ms. Kerr was the director of the respiratory therapy ventilator program and supervised approximately 13 employees. (Tr. 40). Ms. Kerr shared responsibility for employee training and

held hiring and firing authority. (*Id.*). Ms. Kerr also taught respiratory therapy students on rotation, performed marketing duties for St. Augustine, and managed the hospital's blood laboratory. (Tr. 40-42).

Ms. Kern can no longer work full time because her daily back pain has not subsided since November 2020. (Tr. 42-43). She also experiences muscle spasms that she manages with a daily two-hour exercise routine she learned in physical therapy. (Tr. 44-45). Though in pain, Ms. Kern performs household chores, including showering, dressing herself, cooking meals, and cleaning dishes. (Tr. 47). Ms. Kern must take two breaks at midday and after dinner to put her feet up for 45 minutes to an hour. (*Id.*). She cannot run the vacuum cleaner, carry a load of laundry, take out the trash, or lift heavy pots of water. (Tr. 49). This is because she cannot lift, pull, or push anything over five pounds. (Tr. 47). She testified that Dr. Mahlay recommended the restriction and her physical therapist and Dr. Smith, her neurosurgeon, both agreed. (*Id.*). Ms. Kern testified she "feel[s] it immediately" if she pushes, pulls, or lifts anything over five pounds. Ms. Kern can stand for about 30 minutes while cooking, though it causes pain. (Tr. 50). She cannot stand continuously longer than 30 minutes. (*Id.*). Though she occasionally loses her balance, she does not use a walker, cane, or similar assistive device. (Tr. 51). Her pain continues throughout each day, no matter what position she adopts. (Tr. 53).

The VE characterized Ms. Kern's past work as a respiratory therapist as a therapist, a skilled job with a medium exertion level, and as a service supervisor, a skilled job with a light exertion level. (Tr. 53). The VE testified both positions do not have transferable skills. (Tr. 54). The VE stated a hypothetical person with Ms. Kern's age, education, and work history, who can lift and carry up to 10 pounds frequently and up to 20 pounds occasionally and who cannot climb ladders,

7

ropes, or scaffolds, but can occasionally climb ramps or stairs, and can occasionally stoop, crouch, or crawl, could still perform the service supervisor job. (Tr. 54-55). If the hypothetical person is off task for more than 10% of the day due to her symptoms, there would be no competitive full-time employment. (Tr. 55-56). He opined that between 0% to 9% off-task time is acceptable. (Tr. 56). The VE also testified employers tolerate one to two monthly absences on average and there would not be competitive full-time employment for a person who requires an additional 45-minute break in the middle of the workday in addition to other breaks. (*Id.*). The VE also concluded a person who cannot stand or walk for at least two hours in a workday would be limited to sedentary employment and cannot do any light exertion level job. (Tr. 56-57). Finally, the VE stated an individual who cannot lift more than 10 pounds cannot perform any job in Ms. Kern's previous work experience. (Tr. 57).

### STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

8

3.     Does the severe impairment meet one of the listed impairments?

4.     What is claimant's residual functional capacity and can claimant perform past relevant work?

5.     Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity (RFC) to perform available work in the national economy. *Id.* The ALJ considers the claimant's RFC, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is the claimant determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

### The ALJ's Decision

At Step One, the ALJ determined Ms. Kern had not engaged in substantial gainful activity since the alleged disability onset date of January 29, 2021. (Tr. 17). At Step Two, the ALJ identified the following severe impairments: multiple sclerosis, scoliosis, lumbar degenerative disc disease, and mild lumbar canal stenosis. (*Id.*).

At Step Three, the ALJ determined Ms. Kern did not have an impairment or combination of impairments that meets or medical equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18). The ALJ specifically addressed Listings 1.15 (disorders of the skeletal spine), 1.16 (lumbar spinal stenosis), and 11.09 (multiple sclerosis). (*Id.*).

9

Regarding Listings 1.15 and 1.16, both share the same three criteria that the ALJ compared with Ms. Kern's medical records and determined she did not have (1) a documented medical need for a walker, bilateral canes, bilateral crutches, or a wheeled and seated mobility device involving the use of both hands; (2) an inability to use one upper extremity to independently initiate, sustain, and complete work-related activities involving fine and gross movements together with a documented medical need for a one-handed hand-held assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand; or (3) an inability to use both upper extremities to the extent that neither extremity can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements. (*Id.*). As to Listing 11.09, the ALJ determined Ms. Kern's multiple sclerosis did not result in (1) disorganization of motor function in two extremities, resulting in an extreme limitation in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities; or (2) a marked limitation in physical functioning and in one of the following: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing oneself. (*Id.*).

Before proceeding to Step Four, the ALJ reviewed the medical records, administrative hearing testimony, and medical opinions and determined Ms. Kern has

> the residual functional capacity to perform light work as defined in 20 CFR § 404.1567(b) except can never climb ladders, ropes, or scaffolds. [Ms. Kern] [c]an occasionally climb ramps and stairs. [Ms. Kern] [c]an occasionally stoop, crouch, and crawl.

(Tr. 19).

At Step Four, the ALJ determined Ms. Kern could perform past relevant work as a service supervisor but did not determine whether Ms. Kern could perform past relevant work as a respiratory therapist. (Tr. 25). Because Ms. Kern can perform her past relevant work, the ALJ did not make a determination at Step Five.

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters*, 127 F.3d at 528. "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).

In determining whether the Commissioner's findings are supported by substantial evidence, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn the ALJ's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). This is so because there is a "zone of choice" within which the Commissioner can act, without fear

of court interference. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citing *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

However, "a substantiality of evidence evaluation does not permit a selective reading of the record. Substantiality of evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Social Security*, 531 F. App'x 636, 641 (6th Cir. 2013) (cleaned up).

A district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (internal quotations omitted). Even if substantial evidence supports the ALJ's decision, the court must overturn when an agency does not observe its own procedures and thereby prejudices or deprives the claimant of substantial rights. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004).

## DISCUSSION

Ms. Kern brings three issues for review:

1.  Whether the ALJ erred in finding Dr. Mahlay's opinions unpersuasive and lacked a logical bridge in denying this claim.

2.  Whether the ALJ erred in the evaluation of Ms. Kern's pain.

3.  Whether the ALJ erred in her determination that Ms. Kern could return to her past work as a service supervisor.

(ECF #9 at PageID 819).

12

I.      **The ALJ properly assessed the persuasiveness of Dr. Mahlay's medical opinion.**

In her first issue for review, Ms. Kern argues the ALJ erroneously rejected Dr. Mahlay's medical opinion as Ms. Kern's long-term treating physician because the ALJ's reasoning did not build an accurate and logical bridge to her conclusion. (ECF #9 at PageID 828, 829). I conclude this argument is without merit.

The ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinions . . . including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, the ALJ determines the persuasiveness of a medical opinion using five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion. *Id.* § 404.1520c(c)(1)-(5). Supportability and consistency are the most important factors the ALJ must consider. *Id.* § 404.1520c(b)(2); *see also Palmore v. Comm'r of Soc. Sec.*, No. 1:20-CV-36, 2021 WL 1169099, at *4 (S.D. Ohio Mar. 29, 2021).

With respect to the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . ." *Id.* § 404.1520c(c)(2).

The ALJ is required to "*explain* how [the ALJ] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. *Id.* § 404.1520c(b)(2)

13

(emphasis added). Conversely, the ALJ "may, but [is] not required to, explain" how the ALJ considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id.* When two or more medical opinions about the same issue are both equally well-supported and consistent with the record, but are not exactly the same, the ALJ must "articulate how [he or she] considered the other most persuasive factors" of relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id.* § 404.1520c(b)(3).

Dr. Mahlay rendered two medical opinions regarding Ms. Kern's physical functioning, the first on June 14, 2021 and the second on October 4, 2021. (Tr. 322-23, 532-33). In each opinion, Dr. Mahlay concluded Ms. Kern was limited to lifting and carrying five pounds, standing and walking for a total of one hour in an eight-hour workday, and sitting for three hours in an eight-hour workday. (Tr. 322, 532). Dr. Mahlay also concluded in both opinions that Ms. Kern's severe pain interfered with concentration, took her off-task, caused absenteeism, and required additional, unscheduled rest periods. (Tr. 323, 533). In his first opinion, Dr. Mahlay opined Ms. Kern required a total of five to six hours of additional rest time in an average day. (Tr. 323).

Ms. Kern contends that if the ALJ accepted Dr. Mahlay's opinions, the ALJ would have found Ms. Kern has a sedentary RFC and allow for a finding of disability. (ECF #9 at PageID 832). *Supportability.* Although the ALJ did not expressly cite § 404.1520c(c)(1), substantial evidence supports the ALJ's determination that Dr. Mahlay's opinions were not supported. The ALJ made a supportability finding by noting the opinions "contain excessive limitations and conclusory statements regarding the claimant's disability" and "are unsupported by the record." (Tr. 24); *see also* 20 C.F.R. § 404.1520c(c)(1) ("[t]he more relevant the objective medical evidence and

14

supporting explanations presented . . . the more persuasive the opinions . . . will be."). As a general matter, an ALJ may properly give little weight to a medical source's check-box form of functional limitations where the form does not cite clinical test results, observations, or other objective findings. *Ellars v. Commissioner of Soc. Sec.*, 647 F. App'x 563, 567 (6th Cir. 2016) (collecting cases).

The May and October opinions were completed on check-box forms, on which Dr. Mahlay checked boxes and wrote cursory statements about the supporting medical findings. (Tr. 322-23, 532-33). The ALJ factored those characteristics into her persuasiveness determination noting Dr. Mahlay's "completion of these forms seem more as catch-all checklist-type forms, that lack narratives and citations to medical exams." (Tr. 24). The ALJ noted that Dr. Mahlay's opinions on Ms. Kern's functioning were supported by "conclusory statements." (Tr. 24). The opinions themselves offer repeated single-sentence explanations that Ms. Kern's severe spinal disease limited her functioning. (Tr. 322-23, 532-33).

In the October opinion, many of the medical findings Dr. Mahlay provides are "as above." (Tr. 532-33). The ALJ noted Dr. Mahlay's opinion did not include any imaging of Ms. Kern's spine. (Tr. 24). Dr. Mahlay's opinion also did not contain any references to test results, observations, or other objective findings. *Kreilach v. Comm'r of Soc. Sec.*, 621 F. Supp. 3d 836, 847 (N.D. Ohio 2022); *see also* Social Security Ruling (SSR) 16-3p, 2017 WL 5180304, at *5 (Oct. 25, 2017) (listing joint motion, muscle spasm, sensory deficit, motor disruption, muscle strength, and muscle wasting as objective evidence of pain symptoms). Only in Dr. Mahlay's May opinion does he reference physical therapy notes, but, as described further below, the ALJ found Dr. Mahlay's conclusions inconsistent with those notes. (Tr. 24, 322). Consequently, substantial evidence supports the ALJ's finding that Dr. Mahlay's opinions were not supported.

15

*Consistency.* Though the ALJ again did not expressly cite § 404.1520c(c)(2), substantial evidence supports the ALJ's determination that Dr. Mahlay's opinions were not consistent with the record. The ALJ made a consistency finding by noting the opinions "were not consistent with other examination findings by Dr. Smith, the Mellen Center, Southwest Pain Management and the physical therapist." (Tr. 24; *see* 20 C.F.R. § 404.1502c(c)(2) ("[t]he more consistent a medical opinion . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion . . . will be.")). The ALJ noted the discrepancy between Dr. Mahlay's May 2021 opinion (noting that Ms. Kern was prescribed a cane, was limited in what she could lift and how long she can stand, walk, and sit) and the notes from Ms. Kern's June 7, 2021 visit to the Cleveland Clinic (reporting no assistive device, normal strength, and mobility). (Tr. 24; *compare* Tr. 323 *with* Tr. 680). Similarly, Dr. Mahlay's reports differ from the records of Ms. Kern's December 8, 2021 visit to her pain-management clinic. (Tr. 601). Ms. Kern reported still having intermittent back pain but it was "far better than it had been previously," which the nurse practitioner assessed that "NSAIDs seem to control pain at this point" and Ms. Kern reported to be taking 800 mg of Advil daily. (Tr. 601-602). With multiple citied inconsistencies between Dr. Mahlay's opinions and Ms. Kern's other medical records, substantial evidence supports the ALJ's determination that Dr. Mahlay's opinions were not consistent with the record.

Ms. Kern argues the ALJ held Dr. Mahlay's long-standing doctor-patient relationship with Ms. Kern as suggesting his opinions are less persuasive and the ALJ characterized Dr. Mahlay's opinions as more akin to an "advocate's opinion than a truly objective medical assessment of the claimant's functioning." (Tr. 24). The relationship of a medical source to the claimant is a persuasiveness factor under 20 C.F.R. § 404.1520c(c)(3). Specifically, "[t]he length of time a

16

medical source has treated a claimant may help demonstrate whether the medical source has a longitudinal understanding of [a claimant's] impairment(s)." 20 C.F.R. § 404.1520c(c)(3)(i). Nevertheless, "[a] treating physician's opinion must always be viewed in conjunction with the rest of the medical record, because he may become sympathetic with the patient, and 'too quickly find disability.'" *Foutty v. Comm'r of Soc. Sec.*, No. 5:10 CV 551, 2011 WL 2532915, at *8 (N.D. Ohio June 2, 2011) (quoting *Ketelboeter v. Astrue*, 530 F.3d 620, 625 (7th Cir. 2008)), *report and recommendation adopted*, 2011 WL 2532397 (N.D. Ohio June 24, 2011). Thus, the ALJ did not err in concluding Dr. Mahlay's long-standing relationship with Ms. Kerr undermined the objectivity of Dr. Mahlay's opinions where, as discussed above, substantial evidence supported the ALJ's determinations that Dr. Mahlay's opinions were not supported by and not consistent with the record.t

For these reasons, I conclude the ALJ properly assessed the persuasiveness of Dr. Mahlay's medical opinion. Therefore, I decline to order remand on this basis.

## II.    Substantial evidence supported the ALJ's symptom evaluation findings.

In her second issue for review, Ms. Kern argues the ALJ erred in assessing the impact of her pain. (ECF #9 at PageID 833). Ms. Kern contends the ALJ "cherry-picked the record to undermine [Ms. Kern]'s credibility" and "inserted herself into the analysis played doctor." (*Id.* at PageID 834).

An ALJ follows a two-step process for evaluating an individual's symptoms. First, the ALJ determines whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. SSR 16-3p, 2017 WL 5180304. Second, the ALJ evaluates the intensity and persistence of the individual's symptoms and determines the extent to which they limit the individual's ability to perform work-related activities. *Id.*

At the second stage, recognizing that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with the same medical impairments, the same objective medical evidence, and the same non-medical evidence, the ALJ considers the entire case record, including the objective medical evidence; the individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case. *Id.* In addition, the ALJ uses the factors set forth in 20 C.F.R. § 404.1529(c)(3) to evaluate the individual's statements:

1.  A claimant's daily activities;

2.  The location, duration, frequency, and intensity of pain or other symptoms;

3.  Factors that precipitate and aggravate the symptoms;

4.  The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5.  Treatment, other than medication, an individual receives or has received for relief from pain or other symptoms;

6.  Any measures other than treatment an individual uses or used to relieve pain or other symptoms; and

7.  Any other factor concerning an individual's functional limitations and restrictions due to pain and other symptoms.

The ALJ is not required to analyze all seven factors, only those germane to the alleged symptoms. *See, e.g., Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005) ("The ALJ need not analyze all seven factors identified in the regulation but should provide enough assessment to assure a reviewing court that he or she considered all relevant evidence.").

The ALJ is not required to accept the claimant's subjective complaints and may discount subjective testimony when the ALJ finds those complaints are inconsistent with objective medical and other evidence. *Jones*, 336 F.3d at 475-76. The ALJ may not reject an individual's statements about her symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged but the ALJ must carefully consider other evidence in the record. *See* 20 C.F.R. § 404.1529(c)(2); *see also* SSR 16-3p, 2017 WL 5180304, at *6.

The ALJ's decision must include "specific reasons for the weight given to the individual's symptoms" in a "consistent" and "clearly articulated" way, so that "any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3, 2017 WL 5180304, at *10. The ALJ's evaluation must be limited "to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments." *Id.* at *11. The ALJ need not use any "magic words," so long as it is clear from the decision as a whole why the ALJ reached a specific conclusion. *See Christian v. Comm'r of Soc. Sec.*, No. 3:20-CV-01617, 2021 WL 3410430, at *17 (N.D. Ohio Aug. 4, 2021).

An ALJ's determination of subjective evidence receives great deference on review. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012). Absent compelling reason, a reviewing court may not disturb the ALJ's analysis of the claimant's subjective complaints, or the conclusions drawn from it. *Baumhower v. Comm'r of Soc. Sec.*, No. 3:18-CV-0098, 2019 WL 1282105, at *2 (N.D. Ohio Mar. 20, 2019). "As long as the ALJ cited substantial, legitimate evidence to support his factual conclusions, we are not to second-guess[.]" *Ulman*, 693 F.3d at 713-14.

Here, the ALJ analyzed the appropriate factors and the objective medical evidence in accordance with the regulations and adequately articulated her reasons for finding Ms. Kern's

19

subjective statements concerning the intensity, persistence, and limiting effects of her pain not consistent with the evidence. As to Ms. Kern's subjective statements about her pain, the ALJ noted as follows:

> In support of her allegations, [Ms. Kern] reported that she puts her feet up in the morning for 45-60 minutes. She reported she cannot pull or push anything over 5 pounds, and she has been advised by her physician that she should not lift anything heavier. She has also reported that she has pain that persists daily, whether at rest or with movement. She reported she has difficulties with personal care because she cannot bend or twist at the waist.

(Tr. 24). The ALJ then discounted Ms. Kern's subjective testimony because the ALJ found her statements to be inconsistent with objective medical and other evidence. *See Jones*, 336 F.3d at 475-76. Specifically, the ALJ noted:

> These subjectively reported symptoms and limitations are not consistent with objective, diagnostic and laboratory findings. For example, although an MRI has confirmed she has multiple intracranial white matter lesions compatible with multiple sclerosis, her condition is stable with no loss of muscle strength, no spasticity, and no loss in sensation or coordination While an MRI of the claimant's lumbar spine showed multilevel degenerative changes, greatest at L4-L5 the changes were identified as "mild canal stenosis," with no disc herniation, and she denied radicular pain. She does have significant lumbar scoliosis which does impede her functioning and cause pain symptoms. She attended physical therapy in 2021 to improve both her pain symptoms and muscle strength. She has received injections which helped reduce her pain by 80%. She lost 30 pounds which she reported made a "significant" improvement in the frequency of her pain symptoms, and she was able to manage her pain with NSAIDs. [Dr. Mahlay] noted a mild antalgic gait but she does not use an assistive device. These findings support the light exertional level, as well as the postural limitations.
>
> However, a more limited RFC is not supported by the record. [Ms. Kern] noted that she had lost 30 pounds in 6 months with intermittent fasting, and that she felt overall that had been very helpful. She noted that she was overall feeling relatively well. She noted that she still experiences low back pain but that it was far better than it had been previously. Most examinations in the prescribed period noted 5/5 muscular strength. In February of 2022, motor strength was 5/5 throughout all extremities. Muscle bulk was normal and symmetric in all extremities. Paraspinal muscle spasm/tenderness was absent except in the right shoulder and paraspinal

musculature documented only by her primary care doctor, [Dr. Mahlay]. On June 7, 2022, [Ms. Kern] presented for a multiple sclerosis follow-up. She denied any new or worsening symptoms. On examination, [Ms. Kern] had 5/5 muscle strength in all extremities. Coordination was intact. [Ms. Kern] was noted to have a normal standard gait, which was independent. She did not have any atrophy or spasticity in the extremities. Despite [Ms. Kern]'s subjective complaints, the record showed that [she] progressed well in physical therapy. Neither Dr. Smith nor the physical therapist imposed weight restrictions on [Ms. Kern].

In sum, the undersigned finds that the evidence of the claimant's daily activities along with the objective medical evidence discussed above establishes the claimant has a greater sustained capacity than she alleges. The undersigned thereby concludes the claimant's subjective complaints and alleged limitations are not fully persuasive and that she retains the capacity to perform work activities with the limitations as set forth above.

(Tr. 24-25) (citations omitted).

This record demonstrates the ALJ considered Ms. Kern's subjective statements about her pain and limitations alongside the entire case record and the objective medical evidence, concluding that Ms. Kern's limitations were more consistent with the ability to perform a range of light work. The medical evidence was mixed: Ms. Kern complained of sometimes serious and limiting pain with clinical signs like tenderness and spasms, but for the most part, her care providers reported Ms. Kern nevertheless retained normal or near-normal strength, and normal mobility. (*Contrast* Tr. 429, 474, 552 *with* Tr. 298, 394-95, 630-31, 680).

The ALJ then analyzed this mixed record by considering multiple factors set forth in 20 C.F.R. § 404.1529(c)(3) for evaluating a claimant's subjective statements about their symptoms against other evidence in the record. The ALJ considered the type, dosage, effectiveness, and side effects of any medication Ms. Kern takes or has taken to alleviate pain or other symptoms under § 404.1529(c)(3)(iv) when the ALJ noted Ms. Kern "received injections which helped reduce her pain by 80%" and that she "was able to manage her pain with NSAIDs." (Tr. 25). The ALJ

21

considered the treatment, other than medication that Ms. Kern receives or has received for relief from pain under § 404.1529(c)(3)(v) and the measures other than treatment Ms. Kern uses or used to relieve pain under § 404.1529(c)(3)(vi) when the ALJ noted Ms. Kern "lost 30 pounds which she reported made a 'significant' improvement in the frequency of her pain symptoms." (Tr. 23). The ALJ also noted Ms. Kern "finished her physical therapy on April 29, 2021 and was supposed to return for 'advanced exercise later in the year'" and inferred from the lack of records showing she returned for the advance exercises that Ms. Kern "was functioning adequately on the existing home exercise program she was utilizing and the NSAIDs." (*Id.*).

Consequently, the ALJ considered the relevant factors, including Ms. Kern's pain management through medication, treatment, and other measures and sufficiently articulated how those factors, in conjunction with the objective medical evidence, support a light RFC. The ALJ supported her conclusions with citations to substantial evidence in the record. This Court cannot overturn the ALJ's conclusions "so long as substantial evidence also supports the conclusion reached by the ALJ" even if Ms. Kern musters a preponderance of the evidence in her favor. *See Jones*, 336 F.3d at 477; *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").

Ms. Kern argues that the ALJ "played doctor" and "cherry-picked" the record to arrive at a desired outcome. (ECF #9 at PageID 833-36). As to whether the ALJ "played doctor" in assessing Ms. Kern's pain symptoms, Ms. Kern argues the ALJ stepped into the role of a medical expert by equating Ms. Kern's pain with her muscle strength. (*Id.* at PageID 834-35). The Social Security Act tasks the ALJ with determining a claimant's RFC. *See* 42 U.S.C. § 423(d)(5)(B); *see also* 20 C.F.R. § 404.1546(c) ("[T]he administrative law judge . . . is responsible for assessing your residual

functional capacity."). Under those regulations, "the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an assessment of [the claimant's] residual functional capacity." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (citation omitted); *see also Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir. 2009) ("Although physicians opine on a claimant's residual functional capacity to work, ultimate responsibility for capacity-to-work determinations belongs to the Commissioner."). The ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding. *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009); *see also Dixon v. Massanari*, 270 F.3d 1171, 1177–78 (7th Cir. 2001) (noting cases in which the court reversed because the ALJ impermissibly "played doctor" by failing to address relevant medical evidence). Consequently, the ALJ did not impermissibly "play doctor" when she evaluated Ms. Kern's subjective statements of pain when weighed against the available medical evidence in the record and tethered her RFC determination to those findings. *See Livingston v. Comm'r of Soc. Sec.*, 776 F. App'x 897, 901 (6th Cir. 2019).

As to whether the ALJ cherry-picked the record, Ms. Kern does not point to evidence that was overlooked or ignored but rather focuses on how the ALJ resolved conflicts between Ms. Kern's subjective statements about her symptoms and the other evidence in the record. This Court cannot independently reweigh conflicting evidence. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971) (in the "not uncommon situation of conflicting medical evidence," the "trier of fact has the duty to resolve that conflict"); *see also DeLong v. Comm'r of Soc. Sec.*, 748 F.3d 723, 726 (6th Cir. 2014) ("cherry-picking" allegations are seldom successful because crediting them would require courts to re-weigh record evidence. As discussed above, the ALJ considered multiple relevant

23

factors and supported her decision with citations to substantial evidence in the record. This Court cannot independently reweigh that evidence and arrive at a new conclusion about Ms. Kern's symptoms. *See Brainard*, 889 F.2d at 681. It bears repeating that even if substantial evidence supports a claimant's position, this Court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones*, 336 F.3d at 477. This is so because of the "zone of choice" within which the Commissioner can act without fear of court interference. *Mullen*, 800 F.2d at 545.

For these reasons, I find there is no basis to disturb the ALJ's analysis regarding Ms. Kern's subjective statements about her symptoms. Therefore, I decline to order remand on this basis.

III.    **The ALJ did not err in determining Ms. Kern could return to her past work as a service supervisor.**

In her final issue for review, Ms. Kern argues that if the ALJ had taken Dr. Mahlay's opinion into consideration, together with Ms. Kern's subjective statements of pain, the ALJ would have determined a sedentary RFC and thus a finding of disability. (ECF #9 at PageID 836). Ms. Kern requests this Court remand the matter so the ALJ can appropriately address her RFC with consideration to all the evidence in the record. (*Id.* at PageID 838). This argument is, in essence, that the errors raised in the first two issues were not harmless. But as discussed above, the ALJ properly assessed the persuasiveness of Dr. Mahlay's medical opinions and properly assessed Ms. Kern's subjective statements about her pain in light of the whole record and the objective medical evidence. Because substantial evidence supported the ALJ's finding of a light RFC, I decline Ms. Kern's request to remand the matter.

24

CONCLUSION

Following review of the arguments presented, the record, and the applicable law, I

**AFFIRM** the Commissioner's decision denying disability insurance benefits.

Dated: May 16, 2024

_____
DARRELL A. CLAY
UNITED STATES MAGISTRATE JUDGE